Eric B. Schwartz, SBN 266554
eschwartz@sidley.com
Robert P. McMahon, SBN 351271
rmcmahon@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

*Attorneys for Defendant*
*DBS Bank (Hong Kong) Limited*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN LIEM,<br><br>    Plaintiff,<br><br>    v.<br><br>CHONG HING BANK LIMITED; DBS BANK (HONG KONG) LIMITED; FUBON BANK LIMITED; RICHOU TRADE LIMITED; FFQI TRADE LIMITED; XIBING LIMITED; AND WEIDEL LIMITED,<br><br>    Defendants. | Case No. 8:24-CV-02819-JVS-KES<br><br>**DBS BANK (HONG KONG) LIMITED'S OPPOSITION TO APPLICATION FOR ENTRY OF DEFAULT JUDGMENT BY COURT AGAINST DEFENDANT DBS BANK (HONG KONG) LIMITED**<br><br>*[Filed concurrently with the Declaration of Mo Yin Ada Chiu]*<br><br>Date:     November 24, 2025<br>Time:     1:30 p.m.<br>Place:    Courtroom 10C<br>          411 West 4th St.<br>          Santa Ana, CA 92701 |

1

## **TABLE OF CONTENTS**

2    I.    INTRODUCTION .................................................................................... 1

3    II.    BACKGROUND ..................................................................................... 2

4        A.    DBS Hong Kong's Status and Lack of U.S. Contacts ........................ 2

5        B.    Plaintiff's Allegations ..................................................................... 3

6    III.    ARGUMENT ......................................................................................... 3

7        A.    The Court Lacks Personal Jurisdiction Over DBS Hong Kong. .......... 3

8            1.    No General Jurisdiction ................................................... 4

9            2.    No Specific Jurisdiction ................................................... 4

10       B.    The *Eitel* Factors Weigh Against Default Judgment. ...................... 8

11           1.    Plaintiff Will Not Be Prejudiced. ................................. 9

12           2.    Plaintiff's Complaint and Substantive Claims Fail. .................. 9

13           3.    Plaintiff's Requested Damages Amount Is Unrelated to DBS

14                Hong Kong's Conduct. ................................................. 15

15           4.    The Material Facts Are Disputed. ................................. 15

16           5.    DBS Hong Kong's Failure to Respond Is Excusable Because

17                it Is Not Clear if It Was Properly Served. ............................. 16

18           6.    The Court's Policy Favoring Decisions on the Merits

19                Compels Denial. ........................................................ 16

20       C.    Damages Are Disputed and Untethered to DBS Hong Kong's

21           Alleged Involvement. ................................................................... 17

22   IV.    CONCLUSION ................................................................................... 17

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
  824 F. Supp. 2d 1164 (C.D. Cal. 2011)...........................................................9, 12

*Bailey v. Take Over Barbershop*,
  No. 25-cv-02285, 2025 WL 2995034 (C.D. Cal. Oct. 8, 2025).................... 15, 16

*Berdeaux v. OneCoin Ltd.*,
  561 F. Supp. 3d 379 (S.D.N.Y. 2021) ............................................................... 6

*BNSF Ry. Co. v. Tyrrell*,
  581 U.S. 402 (2017) ........................................................................................ 4

*Bortz v. JP Morgan Chase Bank, N.A.*,
  No. 21-cv-618, 2022 WL 1489832 (S.D. Cal. May 10, 2022)........................... 11

*Chance World Trading E.C. v. Heritage Bank of Com.*,
  438 F. Supp. 2d 1081 (N.D. Cal. 2005).......................................................10, 11

*Convergen Energy LLC v. Brooks*,
  No. 20-cv-3746, 2020 WL 5549039 (S.D.N.Y. Sept. 16, 2020).......................... 6

*Core-Vent Corp. v. Nobel Indus. AB*,
  11 F.3d 1482 (9th Cir. 1993)............................................................................ 7

*CSPC Dophen Corp. v. Zhixiang Hu*,
  No. 17-cv-1895, 2018 WL 6184617 (E.D. Cal. Nov. 27, 2018)....................... 16

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ......................................................................................... 4

*Derakshan v. Wells Fargo Bank, N.A.*,
  No. 23-cv-05900, 2024 WL 5256488 (C.D. Cal. Oct. 22, 2024)....................... 12

*Dev. Profs. Inc.-Making Cents Int'l LLC v. Bank of Am. N.A.*,
  No. 24-cv-1529, 2025 WL 2734557 (E.D. Va. Sept. 25, 2025) ....................... 13

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986)..............................................................8, 9, 15, 16

*Elkin Valley Baptist Church v. PNC Bank, N.A.*,
 748 F. Supp. 3d 293 (W.D. Pa. 2024) ........................................................... 13

*Fatnani v. JPMorgan Chase Bank, N.A.*,
 743 F. Supp. 3d 1253 (D. Or. 2024) ................................................................ 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011) ......................................................................................... 4

*Gray v. Ben*,
 No. 22-cv-03090, 2022 WL 16859609 (C.D. Cal. Nov. 9, 2022) .............. 12, 13

*Gucci Am., Inc. v. Weixing Li*,
 768 F.3d 122 (2d Cir. 2014) ............................................................................ 4

*Harris v. Lloyds TSB Bank, PLC*,
 281 F. App'x 489 (6th Cir. 2008) ..................................................................... 6

*Hau Yin To v. HSBC Holdings PLC*,
 No. 15-cv-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ........................... 6

*Ho v. Pinsukanjana*,
 No. 17-cv-06520, 2019 WL 2415456 (N.D. Cal. June 7, 2019) ..................... 16

*HomeLight, Inc. v. Shkipin*,
 721 F. Supp. 3d 1019 (N.D. Cal. 2024) .......................................................... 15

*Hough v. Carroll*,
 No. 24-cv-02886, 2025 WL 1674425 (C.D. Cal. May 5, 2025) ................... 9, 10

*In re Albert*,
 No. 22-O-30348, 2024 WL 1231293 (Cal. Bar. Ct. Mar. 11, 2024) ............... 11

*In re Carver*,
 No. 12-O-12062, 2016 WL 9649875 (Cal. Bar. Ct. Apr. 12, 2016) ................ 11

*In re Tuli*,
 172 F.3d 707 (9th Cir. 1999) ............................................................................ 3

*Int'l Shoe Co. v. Washington*,
 326 U.S. 310 (1945) ......................................................................................... 4

*J. McIntyre Mach., Ltd. v. Nicastro*,
 564 U.S. 873 (2011) ......................................................................................... 4

DBS HONG KONG'S OPPOSITION TO APPLICATION FOR ENTRY OF DEFAULT JUDGMENT

*Monkton Ins. Servs., Ltd. v. Ritter*,
  768 F.3d 429 (5th Cir. 2014) .......................................................................... 6

*Pebble Beach v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) ........................................................................ 5

*PepsiCo, Inc. v. Cal. Sec. Cans*,
  238 F.Supp.2d 1172 (C.D. Cal. 2002) ........................................................... 15

*Riley v. Caliber Home Loans, Inc.*,
  No. 21-cv-55909, 2022 WL 2072655 (9th Cir. June 9, 2022) ........................... 14

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) .......................................................................... 5

*SFS Check, LLC v. First Bank of Del.*,
  774 F.3d 351 (6th Cir. 2014) .......................................................................... 13

*Sidhu v. Bayer Healthcare Pharms. Inc.*,
  No. 22-cv-01603, 2022 WL 17170159 (N.D. Cal. Nov. 22, 2022) ................... 14

*Sliders Trading Co. L.L.C. v. Well Fargo Bank NA*,
  No. 17-cv-04930, 2017 WL 6539843 (N.D. Cal. Dec. 21, 2017) .............. 12, 13

*Thuney v. Lawyer's Title of Az.*,
  No. 18-cv-1513, 2019 WL 467697 (D. Ariz. Feb. 6, 2019) ............................... 6

*Walden v. Fiore*,
  571 U.S. 277 (2014) .................................................................................. 4, 5, 7

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ...................................................................................... 5

*Zinus, Inc. v. Foshan Aiyi Fam. Article Co.*,
  No. 24-cv-00247, 2025 WL 2093412 (C.D. Cal. July 9, 2025) ......................... 15

**Statutes**

Cal. Bus. & Profs. Code § 17200 *et seq* .................................................................. 14

**Other Authorities**

12 C.F.R. § 211.2(v) ............................................................................................... 2

12 C.F.R. § 211.24 .............................................................................................. 2, 3

1

Fed. R. Civ. Proc. 9(b) ............................................................................................ 12

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.  **INTRODUCTION**

Plaintiff's application for a default judgment against DBS Bank (Hong Kong) Limited ("DBS Hong Kong") should be denied. As a threshold matter, this Court lacks personal jurisdiction over DBS Hong Kong, a foreign bank incorporated and headquartered in Hong Kong with no presence or operations in the United States. DBS Hong Kong has never conducted or aimed any business activities at California or anywhere else in the U.S. It does not maintain any offices, branches, or agents in the United States. The only "DBS"-branded office in California is a representative office of DBS Bank Ltd. ("DBS Singapore") (<u>a separate DBS entity in Singapore</u>); it is <u>not</u> a representative office of DBS Hong Kong itself.  The thin reed of a connection to this jurisdiction is that the Plaintiff allegedly directed his bank to wire $230,000 to a Chinese company who held a bank account with DBS Hong Kong. However, the law is clear that passive receipt of money in a foreign country is not sufficient to confer jurisdiction.

In addition to the insurmountable jurisdictional hurdle he faces, Plaintiff's complaint fails to state any viable claim against DBS Hong Kong. The complaint alleges only that Plaintiff wired money to accounts at DBS Hong Kong owned by other defendants; it pleads no wrongful conduct by DBS Hong Kong.  Plaintiff alleges that DBS Hong Kong should be liable because it failed to properly vet its customers and learn of their fraudulent activities and prevent this from happening. However, that admission is fatal to Plaintiff's claims, because DBS Hong Kong cannot be held liable for any of the claims brought by Plaintiff absent actual knowledge and participation in the alleged acts of those who defrauded him.

Moreover, there is certainly no basis to seek almost a million dollars from DBS Hong Kong in a default judgment, when Plaintiff's own pleading admits that he wired DBS Hong Kong a far lesser sum of $230,000.

What allegedly happened to Plaintiff is certainly unfortunate, if true.  But that does not give him or this Court the power to haul a Hong Kong bank into a U.S.

1  court halfway around the world to pay for scams allegedly committed by third

2  parties.  Under these circumstances, entering a default judgment would be not only

3  void, but manifestly unjust and unreasonable.

4       The Court should deny Plaintiff's application for default judgment.

5  II.    **BACKGROUND**

6       A.    **DBS Hong Kong's Status and Lack of U.S. Contacts**

7       DBS Hong Kong is a financial institution incorporated and headquartered in

8  Hong Kong, with its principal executive offices and decision-making functions

9  located there. Declaration of Mo Yin Ada Chiu ("Chiu Decl.") ¶ 4.  It has no

10 operations in the United States and is not registered or licensed to do business here.

11 It does not have a registered agent, own or lease property, or employ officers or

12 staff in the United States.  *Id*. ¶¶ 5-8.  It also does not maintain any telephone

13 listings or corporate books in the United States, and it pays no U.S. taxes.  *Id*. ¶ 8.

14 Nor does DBS Hong Kong solicit business in the United States or direct any

15 conduct toward the United States. *Id.* ¶¶ 6, 9.  Plaintiff does not allege that DBS

16 Hong Kong ever initiated any contact with him.  Nor does he allege that DBS Hong

17 Kong had knowledge regarding the purpose of the underlying transactions.

18      While there is a representative office of DBS Singapore in California, that

19 representative office is affiliated solely with the Singapore company, not DBS

20 Hong Kong.  DBS Hong Kong conducts no business at that location. *Id.* ¶ 7.

21 Moreover, even if it was somehow affiliated with DBS Hong Kong (it is not), it

22 cannot be tied to the deposits at issue.  Under the legal framework governing

23 activities of foreign banks in the United States, a representative office is not an

24 "agency," "branch," or "commercial lending company," and is prohibited from

25 engaging in banking activities, including "contracting for any deposit or deposit-

26 like liability, lending money, or engaging in any other banking activity for the

27 foreign bank." 12 C.F.R. § 211.24(a), (d)(1). The representative "engages solely in

28 representational and administrative functions" for DBS Singapore. 12 C.F.R. §

211.2(v).

### B.    Plaintiff's Allegations

Plaintiff alleges that he was the victim of cryptocurrency scam. Dkt. 1 (Compl.) ¶¶ 1-2. The perpetrators (individuals and entities unrelated to DBS Hong Kong) allegedly induced Plaintiff to transfer funds under false pretenses. *Id*. ¶¶ 30-37. Plaintiff asserts that, as part of this scheme, he made a single wire transfer to DBS Hong Kong, in the amount of $230,000. *Id.* ¶ 34. According to the Complaint, that account was held by FFQI Trade Limited ("FFQI") which is among the co-defendants. *Id.* There are no allegations that DBS Hong Kong solicited these wire transfers or had any communications with Plaintiff. Plaintiff does <u>not</u> allege that DBS Hong Kong even knew of the alleged scam or had any relationship with the alleged fraudsters apart from the fact that the fraudsters happened to hold bank accounts at DBS Hong Kong. Notably, Plaintiff does not allege that DBS Hong Kong or any of its employees made any misrepresentations to him, that DBS Hong Kong controlled the alleged scammers, or that it took any action in the United States. The sole basis for suing DBS Hong Kong is that it passively received Plaintiff's funds into accounts in Hong Kong owned by the other defendants. Plaintiff claims that DBS Hong Kong <u>should have known</u> that FFQI was engaging in fraud before it received Plaintiff's payment (even though Plaintiff did not), and prevented that fraud. *Id.* ¶ 48.  However, Plaintiff does not explain how exactly DBS Hong Kong was supposed to uncover the alleged fraud.

## III.    <u>ARGUMENT</u>

### A.    The Court Lacks Personal Jurisdiction Over DBS Hong Kong

Before the Court enters default judgment against a defaulting party, the court has an "affirmative duty" to evaluate the basis for personal jurisdiction over the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). "A judgment entered without personal jurisdiction over the parties is void." *Id.* The traditional bases for personal jurisdiction are consent to jurisdiction, personal service within the forum

state, or citizenship or domicile in the forum state. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). Absent one of these bases for jurisdiction (as is the case here), the defendant must have "certain minimum contacts." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The contacts required depends on whether the plaintiff is asserting "specific" or "general" personal jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014). General personal jurisdiction is based on a defendant's continuous presence in a state, whereas specific personal jurisdiction is based on specific contacts with the state specifically related to the claims at issue. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011).

## 1. No General Jurisdiction

Plaintiff does not argue that general jurisdiction exists and it plainly does not because DBS Hong Kong operates exclusively outside the United States and it is not incorporated here, nor does it maintain a principal place of business here. *See, e.g., Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919 (2011) (a corporation is fairly regarded as "at home" for the purpose of general jurisdiction where it is incorporated or where it maintains its principal place of business); *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413–15 (2017) (only in an "exceptional case" can a corporation be subject to general jurisdiction outside those forums); *see also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014) (*Daimler* foreclosed the possibility of exercising general personal jurisdiction over a nonparty Chinese bank with a minimal number of branches in the forum because it was headquartered and incorporated abroad).

## 2. No Specific Jurisdiction

Plaintiff contends that specific jurisdiction exists, but he does not even come close to meeting the standard.  Specific jurisdiction exists when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Daimler*, 571 U.S. at

127. The Ninth Circuit utilizes a three-part test for this analysis: (1) the defendant must have "performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum"; (2) the claim must "arise[ ] out of or result[ ] from the defendant's forum-related activities"; and (3) the exercise of jurisdiction must be reasonable. *Pebble Beach v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). The law is clear that the jurisdictional nexus to support specific jurisdiction "must arise out of contacts that the defendant himself creates with the forum State." *Walden*, 571 U.S. at 284.

  ***Plaintiff cannot meet his burden of establishing the first two prongs of this test.*** DBS Hong Kong has not deliberately targeted the California market or otherwise invoked the benefits and protections of California law, and the claim at issue does not arise out of or result from the DBS Hong Kong's forum-related activities. The *only* connection between DBS Hong Kong and the United States is that Plaintiff himself initiated a wire transfer to an entity who held a bank account in Hong Kong at DBS Hong Kong. Dkt. 1 (Compl.) ¶ 34. That unilateral act by Plaintiff does not constitute a contact by DBS Hong Kong within this forum. The Supreme Court has squarely held that the defendant's own conduct must form the link to the forum, and a plaintiff's unilateral activities are not enough. *Walden*, 571 U.S. at 285 (the plaintiff cannot be "the only link between the defendant and the forum"); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) ("[T]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State").

  While Plaintiff cites *Calder* and Eighth Circuit law to assert the Court should analyze the "effect" on Plaintiff (Dkt. 33 (Mot.) at 12-13), the foregoing test is the Ninth Circuit's articulation of the *Calder* "effects" test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004). In any event, Plaintiff fails the mis-stated *Calder* test because he makes no showing that DBS Hong Kong's

SIDLEY AUSTIN LLP
ATTORNEYS AT LAW

acts were intentional, aimed at California, or that it knew Plaintiff was likely to suffer harm, nor can he because passively accepting a wire is none of those things.

Indeed, "federal courts routinely decline to use money transfers as a basis for specific jurisdiction because the wire transfer is done at the plaintiff's request." *See Thuney v. Lawyer's Title of Az.*, No. 18-cv-1513, 2019 WL 467697, at *6 (D. Ariz. Feb. 6, 2019) (collecting cases); *Fatnani v. JPMorgan Chase Bank, N.A.*, 743 F. Supp. 3d 1253, 1277 (D. Or. 2024) (neither accepting deposits into a bank account nor transferring money out of accounts are sufficient to constitute bank's intentional acts aimed at the state); *Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 495 (6th Cir. 2008) ("The wire transfers accepted or confirmed by Lloyds from Tennessee and any wire transfers originated by Hogsed in the United Kingdom and sent to Tennessee cannot constitute purposeful availment, because none of those transfers were initiated by Lloyds."); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433–34 (5th Cir. 2014) (holding that wire transfers requested by a plaintiff cannot supply a basis for specific personal jurisdiction); *Hau Yin To v. HSBC Holdings PLC*, No. 15-cv-3590, 2017 WL 816136, at *7 n.6 (S.D.N.Y. Mar. 1, 2017), aff'd, 700 F. App'x 66 (2d Cir. 2017) ("The wiring of funds through New York in this case, however, was passive . . . . Here, the passage of money through the U.S. bank accounts were merely incidental and not specifically directed by any of the HSBC entities to facilitate the Ponzi scheme."); *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 409 (S.D.N.Y. 2021) (finding no specific jurisdiction where "Plaintiffs allege adequately only a single transaction . . . that was routed through [bank's] New York correspondent account. That is not enough."); *Convergen Energy LLC v. Brooks*, No. 20-cv-3746, 2020 WL 5549039, at *11 (S.D.N.Y. Sept. 16, 2020) (similar).

Here, DBS Hong Kong did nothing to direct any activity at California. It was Plaintiff who chose to send money to accounts in Hong Kong. *See* Dkt. 1 (Compl.) ¶ 34. Accepting a foreign wire transfer is a passive act by the bank in its home

jurisdiction, not a purposeful availment of the laws of the sender's state, nor is it an action giving rise to the claim. Rather, the injury occurred because Plaintiff was deceived by other actors and chose to send them money; those actors then withdrew or used the funds overseas. *See id.* ¶¶ 39-40. The fact that Plaintiff was located in California when he initiated the transfers is incidental and irrelevant under *Walden*. *See* 571 U.S. at 290 ("mere injury to a forum resident is not a sufficient connection to the forum" absent the defendant's own contacts with the forum). The relationship among DBS Hong Kong, the forum, and the litigation is simply too tenuous to support specific jurisdiction and Plaintiff fails to meet his burden as to the first two prongs.

>  ***Exercising specific jurisdiction would be unreasonable in this case.*** In making this determination, the court may consider the following factors:

> > (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

> *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993).

> All these factors weigh against jurisdiction over DBS Hong Kong:

> > (1) As discussed above, DBS Hong Kong has no presence in the United States and directed no activities here. *Infra* at 4-6.

> > (2) The burden on DBS Hong Kong to defend a case in California is extraordinary as it is incorporated and headquartered in Hong Kong, is not registered to do business in the United States, maintains no offices, property, employees, or books here, and would be forced to defend this action with all relevant witnesses and records located abroad. Chiu Decl. ¶¶ 4, 6–8, 13.

> > (3) Hong Kong has a strong sovereign interest in preventing its banks from being summoned half way across the world based on passive receipt of wire payments.

(4) California has at most a minimal interest in resolving claims against DBS Hong Kong because DBS Hong Kong has never directed activities toward California and does not solicit customers in California or the United States. *Id.* ¶¶ 7–9.

(5) The efficient administration of justice would not be served by forcing a foreign bank with no U.S. ties into a U.S. court, potentially causing international comity concerns, when that bank's connection to the wrongdoing is peripheral at best.

(6) and (7) While Plaintiff may prefer California as a forum, effective relief cannot be obtained here.  The transfers he identifies were payments he sent to accounts maintained by foreign entities.  *Id.* ¶¶ 10–11.  DBS Hong Kong has no assets or presence in the United States, and any judgment entered against it in California would face significant enforcement obstacles abroad. *Id.* ¶ 13.  In these circumstances, litigating in California would not enhance Plaintiff's ability to obtain meaningful recovery, and could very well present obstacles to the efficient resolution of this case against those defendants alleged to have actually engaged in wrongdoing.

In sum, exercising jurisdiction over DBS Hong Kong would be unreasonable and inconsistent with due process and traditional notions of fair play and substantial justice.

## B.    The *Eitel* Factors Weigh Against Default Judgment

If Plaintiff could somehow establish jurisdiction (he cannot), that does not end the analysis.  The Ninth Circuit has identified seven factors (together, the "*Eitel* factors") that a court considers when determining whether to grant a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at issue; (5) the possibility of a dispute regarding material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Here, each of the factors weigh in favor of denying the application for entry of default judgment.

### 1.  Plaintiff Will Not Be Prejudiced

The first factor weighs in DBS's favor because Plaintiff will not be prejudiced absent a default judgment. Plaintiff will still be free to pursue recovery from the individuals who allegedly received the funds.  Moreover, he cannot be prejudiced by being denied a default judgment that will be void for lack of jurisdiction, and which is based on claims that lacked merit in the first place. In addition, if he truly believes he has claims against DBS Hong Kong, he can certainly attempt to bring those claims in a venue with jurisdiction to hear them.

### 2.  Plaintiff's Complaint and Substantive Claims Fail.

The second and third *Eitel* factors also weigh against entry of default judgment, as Plaintiff's claims against DBS Hong Kong are deficient and premised on theories rejected by California law.

### *Aiding and Abetting Fraud (Count II)*

"To prevail on an aiding and abetting fraud claim, a plaintiff must establish the aider and abettor (1) had actual knowledge of the underlying wrongful conduct, and (2) gave substantial assistance or encouragement to another to so act." *Hough v. Carroll*, No. 24-cv-02886, 2025 WL 1674425, at *6 (C.D. Cal. May 5, 2025) (citing *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 884-85 (N.D. Cal. 2011)). A plaintiff "must plead sufficient facts to make it plausible that the defendant in question had actual knowledge of the underlying fraud." *Hough*, 2025 WL 1674425, at *6 (citing *Chang v. Wells Fargo Bank, N.A.*, No. 19-cv-01973, 2020 WL 1694360, at *4 (N.D. Cal. Apr. 7, 2020)). Additionally, "substantial assistance must be pleaded with particularity." *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1188 (C.D. Cal. 2011).

"In California, 'ordinary business transactions' a bank performs for a customer can satisfy the substantial assistance element of an aiding and abetting claim if the bank actually knew those transactions were assisting the customer in committing a specific tort. As such, in cases where a plaintiff alleges that a bank

aided and abetted fraud, knowledge is the crucial element." *Hough,* 2025 WL 1674425, at *6 (emphasis added). Constructive knowledge is not sufficient. "Plaintiff must plead factual allegations sufficient to plausibly suggest that the aider and abettor knew of the *specific* fraud perpetrated by the primary tortfeasor." *Hough*, 2025 WL 1674425.

In *Hough*, the plaintiff alleged that banks aided and abetted a tortfeasors' fraud of (1) inducing clients to send money and (2) concealing assets from creditors. *Id.* at *8-9. To allege the bank's knowledge, plaintiff alleged that the banks were generally aware of the tortfeasor's suspicious activity. *Id.* The court dismissed the claims because the allegations regarding the bank's knowledge were not specific to the underlying fraud. *Id.* The court noted that the "allegations of supposedly suspicious transactions suggest, at most, that Bank of America may have known that 'something fishy' was happening, . . . not that Bank of America knew of [others'] specific primary wrongful conduct." *Id.* at *8-10 (dismissing claims against Wells Fargo because while the allegations may have suggested the bank "may have known about general red flags of unusual account activity," they were not red flags specific to the fraud perpetrated.); *see also Chance World Trading E.C. v. Heritage Bank of Com.*, 438 F. Supp. 2d 1081, 1085 (N.D. Cal. 2005) (A "banks' alleged knowledge of suspicious account activities—even money laundering—without more, does not give rise to tort liability for the banks.") (citing *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1151 (2005)).

Here, Plaintiff makes no allegations that DBS Hong Kong knew of the tortfeasors' specific fraud to take money from Plaintiff under the false pretenses of cryptocurrency investments; in fact, he admits that it did not know. That is fatal. Instead, Plaintiff generally alleges that the tortfeasors presented "red flags" and that DBS Hong should suspect the tortfeasors would be involved in "suspicious activities." Dkt. 1 (Compl.) ¶ 48. However those are the exact kind of general allegations *Hough* rejected as insufficient. 2025 WL 1674425, at *8-10. Indeed, no

allegations indicate that DBS Hong Kong had any knowledge that the tortfeasors

would use the accounts to defraud Plaintiff as part of a cryptocurrency scam.

Plaintiff's own cited cases further demonstrate the insufficiency of his

allegations, as they hold that a bank's alleged failure to follow internal procedures

is insufficient to constitute knowledge that individuals were engaged in fraudulent

activity. *Chance World Trading E.C.,* 438 F. Supp. 2d at 1085 ("As a matter of

California law, Heritage Bank's failure to adhere to a two-signature requirement or

follow other internal policies regarding the documents required for corporate

checking accounts cannot constitute knowledge that Ms. Yadav–Ranjan was

engaged in any fraudulent activity."). Rather, a Plaintiff "must produce evidence

that [DBS Hong Kong] had actual knowledge of [others'] crimes; it cannot rely on

inferences drawn from [allegedly] sloppy work." *Id.* Thus, Plaintiff's attempt to

establish knowledge based on DBS Hong Kong's alleged failure to follow

procedures is insufficient. *See* Dkt. 1 (Compl.) ¶¶ 49-50.

Plaintiff's citations to opinions by the California State Bar Court for the

proposition that "willful blindness" may impute knowledge are irrelevant and

contradicted by this Circuit's authority. *See* Dkt. 33 (Mot.) at 15. Those opinions

involve attorneys and the unauthorized practice of law, and are unrelated to the

present case, involving a bank. *See In re Carver*, No. 12-O-12062, 2016 WL

9649875, at *3-4, 7 (Cal. Bar. Ct. Apr. 12, 2016) (recommending individual be

disbarred where he committed unauthorized practice of law); *In re Albert*,  No. 22-

O-30348, 2024 WL 1231293, at *11 (Cal. Bar. Ct. Mar. 11, 2024) (analyzing

attorney's intent for committing unauthorized practice of law). California law is

clear that knowledge for aiding and abetting tort must be actual and specific. *See*

*e.g.*, *Bortz v. JP Morgan Chase Bank, N.A.*, No. 21-cv-618, 2022 WL 1489832, at

*6 (S.D. Cal. May 10, 2022) (the aiding and abetting "standard requires Plaintiffs to

plead Defendants' actual knowledge of the third-party's wrongful conduct. In other

words, constructive knowledge of the underlying fraud does not suffice to establish

the requisite actual knowledge.") (aff'd *Bortz v. JP Morgan Chase Bank, N.A.*, No. 22-cv-55582, 2023 WL 4700640 (9th Cir. July 24, 2023)). Accordingly, Plaintiff's theories to impute knowledge should be rejected as contradicted by this Circuit's authority and insufficient under Rule 9(b) heightened particularity requirements.

Plaintiff's allegations of DBS Hong Kong's "substantial assistance" likewise fail because they do not meet the heightened particularity requirements of Rule 9(b). *Allstate Ins. Co.*, 824 F. Supp. 2d at 1188 ("[S]ubstantial assistance must be pleaded with particularity."). Here, Plaintiff only generally and conclusorily alleges that DBS Hong Kong substantially assisted the tortfeasors by not adhering to certain policies. *See* Dkt. 1 (Compl.) ¶¶ 49-51. However, Plaintiff does not specify the actual conduct that Plaintiff failed to undertake, or what specific actions DBS Hong Kong took to actually assist the tortfeasors.

Plaintiff fails to state a claim for aiding and abetting.

### *Negligence (Count III)*

Plaintiff's negligence claim fails to allege the essential elements of duty, breach, and causation to Plaintiff's alleged harm. *See Sliders Trading Co. L.L.C. v. Well Fargo Bank NA,* No. 17-cv-04930, 2017 WL 6539843, at *8 (N.D. Cal. Dec. 21, 2017) (elements for negligence claim are duty, breach, causation, and damage). *First*, Plaintiff's negligence claim lacks merit because DBS Hong Kong does not owe Plaintiff—a non-customer—a duty. "Banks do not owe a duty of care to non-customers to protect them from the tortious conduct of the banks' customers." *Id.* (denying negligence claim where plaintiff failed to plausibly plead a relationship with Wells Fargo that gives rise to a duty of care); *Derakshan v. Wells Fargo Bank, N.A.*, No. 23-cv-05900, 2024 WL 5256488, at *5 (C.D. Cal. Oct. 22, 2024) ("[C]ourts have generally held that banks have a limited duty of care or no duty of care beyond the bank-depositor relationship."). Indeed, "California law is clear that a bank is under no duty to supervise the activity of account holders or inquire into the purpose for which funds are being used." *Gray v. Ben,* No. 22-cv-03090, 2022

WL 16859609, at *4 (C.D. Cal. Nov. 9, 2022). "Moreover, banks' policies and procedures do not create a duty of care. Plaintiffs must first establish an independent legal duty." *Id.* at *5.

Here, Plaintiff's entire theory for DBS Hong Kong's duty to Plaintiff is foreclosed by California law. Plaintiff attempts to establish a duty based upon a "special relationship" to non-customers, that banks have to reduce crime by their users, Dkt. 1 (Compl.) ¶ 56, but "[b]anks do not owe a duty of care to non-customers to protect them from the tortious conduct of the banks' customers." *Sliders Trading Co. L.L.C.*, 2017 WL 6539843, at *8. Additionally, Plaintiff's position that DBS had a "duty to adhere to the requirements of KYC/AML laws and/or internal risk management policies," Dkt. 33 (Mot.) at 18, is insufficient to create a duty to Plaintiff, as "banks' policies and procedures do not create a duty of care." *Gray*, 2022 WL 16859609, at *5.

Plaintiff's lone citation to *Elkin Valley Baptist Church v. PNC Bank, N.A.*, 748 F. Supp. 3d 293 (W.D. Pa. 2024), an out-of-circuit case applying Pennsylvania law, is an outlier and it's reasoning has been rejected within its own circuit. *See Dev. Profs. Inc.-Making Cents Int'l LLC v. Bank of Am. N.A.*, No. 24-cv-1529, 2025 WL 2734557, at *8 (E.D. Va. Sept. 25, 2025) (citing *Elkin Valley* but nevertheless finding negligence claim failed for failure to establish a duty where plaintiff was not a customer, because "a bank does not owe noncustomers a duty of care."). In any event, *Elkin Valley* is contradicted by both California law and the weight of this country's authority. *See e.g.*, *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 357 (6th Cir. 2014) ("The almost-universal law in this country is that banks owe a duty of care only to their own customers.").

*Second*, Plaintiff's allegations fail to allege *facts* demonstrating that DBS Hong Kong breached any policies.  He claims that the defendant banks did so on information and belief, but offers no facts demonstrating how or when they breached those policies, or with respect to whom.

*Third*, Plaintiff's negligence claim against DBS Hong Kong for damages "in an amount no less than $986,000" fails for lack of causation. Here, DBS Hong Kong had no involvement with the majority of the amount alleged as damages. Of the $986,000 alleged as harm and damages, only $230,000 was wired to an individual using a DBS Hong Kong bank account. Dkt. 1 (Compl.) ¶ 34. Thus, Plaintiff's claims for the full amount of monetary harm also fail for lack of causation.

### ***Violation of California Business & Professions Code § 17200 et seq. (Count IV)***

Plaintiff's UCL claims fail for the same reasons as his aiding and abetting and negligence claims. "[A] UCL claim stands or falls 'depending on the fate of the antecedent substantive causes of action.'" *Riley v. Caliber Home Loans, Inc.*, No. 21-cv-55909, 2022 WL 2072655, at *2 (9th Cir. June 9, 2022) (quoting *Krantz v. BT Visual Images, LLC*, 89 Cal. App. 4th 164, 178 (2001)); *see also Sidhu v. Bayer Healthcare Pharms. Inc.*, No. 22-cv-01603, 2022 WL 17170159, at *8 (N.D. Cal. Nov. 22, 2022) ("If the predicate claims fail, the UCL claim [under the unlawful prong] also fails.").

Plaintiff's UCL allegations under the unlawful prog are based solely on DBS's purported aiding and abetting and/or negligence, Dkt. 1 (Compl.) ¶ 64, and thus Plaintiff's UCL claim under the unlawful prong fails for the same reasons as those claims and allegations. *See* Dkt. 33 (Mot.) at 20 ("Banking Defendants' aiding and abetting and/or negligence in assisting said frauds as set forth above constituted unlawful conduct under the UCL."); Dkt. 1 (Compl.) ¶ 64 (same).

Plaintiff's UCL claim under the fraud prong fails because he has not even attempted to allege any fraudulent conduct by DBS Hong Kong, and his aiding and abetting fraud claim is deficient for the reasons explained above. *See infra* at 9-14.

In turn, the claim under the unfair prong also fails, because it is also based on the same alleged conduct underlying the deficient aiding and abetting and

negligence claims. *HomeLight, Inc. v. Shkipin*, 721 F. Supp. 3d 1019, 1025 (N.D. Cal. 2024).

Default judgment should not be entered whereas here Plaintiff failed to state a claim. *Bailey v. Take Over Barbershop*, No. 25-cv-02285, 2025 WL 2995034, at *4-6 (C.D. Cal. Oct. 8, 2025) (refusing to enter default judgment where Plaintiff failed to state a claim and noting "it would also be inequitable to grant default judgment and to force compliance on the basis of a Complaint that does not state a claim.").

Thus, factors 2 and 3 weigh heavily against entry of default judgment.

### 3. Plaintiff's Requested Damages Amount Is Unrelated to DBS Hong Kong's Conduct.

"Under the third *Eitel* factor, the court must consider the amount of money at stake in relation to the seriousness of *Defendant*'s conduct." *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176-77 (C.D. Cal. 2002) (emphasis added). Here, Plaintiff seeks default judgment against DBS, in an amount far greater than DBS Hong Kong's alleged involvement. DBS Hong Kong is alleged to passively receive a wire in the amount of $230,000, which occurred through an account at DBS Hong Kong. Dkt. 1 ¶ 34. However, Plaintiff seeks entry of default judgment against DBS Hong Kong for more than three times that amount, for $986,000. Dkt. 33 (Mot.) at 20-21. Accordingly, the sum of money at issue is grossly disproportionate to DBS Hong Kong's alleged conduct, and thus weighs against entry of default judgment.

### 4. The Material Facts Are Disputed.

Upon an entry of default, only "well-pleaded allegations of the complaint relating to liability are taken as true." *PepsiCo*, 238 F. Supp. 2d at 1175. Thus, where Plaintiff fails to state a claim, material facts are likely to be disputed. *Zinus, Inc. v. Foshan Aiyi Fam. Article Co.*, No. 24-cv-00247, 2025 WL 2093412, at *7 (C.D. Cal. July 9, 2025) (noting that where "the Court finds the factual allegations

in the Complaint insufficient to state claim, there is certainly a possibility that the material facts may be disputed."). In such instances, the factor weighs against entering default judgment. *Id.* Here, as discussed above, Plaintiff fails to state claims against DBS Hong Kong, as critical elements of each claim are missing. *See infra* at 9-15. Moreover, DBS Hong Kong vehemently disputes and rejects any allegation that it fails to follow proper procedures or is otherwise willingly blind to fraudulent activities using bank accounts maintained at DBS Hong Kong. Thus, this factor weighs in favor of DBS Hong Kong and against entry of default.

### 5. DBS Hong Kong's Failure to Respond Is Excusable Because it Is Not Clear if It Was Properly Served.

DBS Hong Kong's failure to respond is excusable because it did not believe service was proper. There is case law stating that hand delivery of summons on a Hong Kong entity, as happened here, does not comply with the Hague Convention. *See Ho v. Pinsukanjana*, No. 17-cv-06520, 2019 WL 2415456, at *3–4 (N.D. Cal. June 7, 2019) (quashing proof of service by hand delivery on Hong Kong entity because plaintiff did not comply with the Hague Convention); *CSPC Dophen Corp. v. Zhixiang Hu*, No. 17-cv-1895, 2018 WL 6184617, at *10–11 (E.D. Cal. Nov. 27, 2018) (same). Also, this Court denied Plaintiff's first request for default due to lack of evidence of proper service. *See* Dkt. 24. The Court subsequently found that service was proper and entered the default. DBS Hong Kong respectfully maintains that service was not proper, but will not argue that issue herein, except to say that in light of the foregoing, and the fact that there is self-evidently no jurisdiction over it, it was eminently reasonable for DBS Hong Kong not to respond until now.

### 6. The Court's Policy Favoring Decisions on the Merits Compels Denial.

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Thus, this factor weighs against entering default judgment. *See also Bailey*, 2025 WL 2995034, at *4-6 (refusing to enter default judgment

where Plaintiff failed to state a claim and noting "it would also be inequitable to grant default judgment and to force compliance on the basis of a Complaint that does not state a claim.").

C.    **Damages Are Disputed and Untethered to DBS Hong Kong's Alleged Involvement.**

As discussed above, damages in the requested sum of $986,000.00 are inappropriate for a default judgment against DBS Hong Kong. Plaintiff alleges DBS Hong Kong was involved with, at most, $230,000 which was wired to an account held through DBS Hong Kong. Dkt. 1 (Compl.) ¶ 34. Accordingly, a judgment in the amount of $986,000 (over three times the amount related to any DBS Hong Kong conduct), is grossly disproportionate to DBS Hong Kong's involvement in the case. The Court should not enter default in the requested amount.

IV.    **CONCLUSION**

For the foregoing reasons, the Court should Deny Plaintiff's Application for Entry of Default Judgment.


Dated:        November 6, 2025            SIDLEY AUSTIN LLP


By: _____
                                       Eric B. Schwartz

                                       Attorneys for Defendant

1

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

2        The undersigned counsel of record for Defendant DBS Bank (Hong Kong)

3   Limited certifies that this opposition contains 5,629 words, which complies with the

4   word limit of L.R. 11-6.1.

5

6   Dated: November 6, 2025              By: */s/ Eric B. Schwartz*

7                                            Eric B. Schwartz

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28